# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1548-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

S.G.-R.,

    Defendant-Appellant.

_____

Submitted January 29, 2020 – Decided February 10, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 16-01-0161.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Tried before a jury on a three-count indictment, defendant was convicted of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4 (count three). The trial judge sentenced defendant to an aggregate twenty-five year term, with a twenty-five year period of parole ineligibility.[1]

On appeal, defendant raises the following contentions:

> POINT I
>
> DEFENDANT'S STATEMENT TO [DETECTIVE] MORENO SHOULD HAVE BEEN SUPPRESSED BECAUSE THE STATE FAILED TO PROVE THAT DEFENDANT WAS FULLY AWARE THAT AN ARREST WARRANT WAS IN HAND.
>
> POINT II
>
> THE VICTIM'S STATEMENT TO DETECTIVES ENTERED INTO EVIDENCE AT TRIAL WAS CUMULATIVE, SHOULD NOT HAVE BEEN ADMITTED, AND ITS ADMISSION INTO EVIDENCE DEPRIVED THE DEFENDANT OF A FAIR TRIAL. (Not Raised Below).

---

[1] We decline to consider the State's contention, made without cross-appealing from the sentence, that the judgment of conviction incorrectly refers to the No Early Release Act, N.J.S.A. 2C:43-7.2., which the State asserts is not applicable in this matter. The State may raise this argument before the trial court. See R. 3:21-10(b)(5).

2

POINT III

THE DEFENDANT WAS DENIED THE RIGHT TO
A FAIR TRIAL BY THE REPEATED REFERENCES
TO THE DEFENDANT BEING A FUGITIVE FROM
JUSTICE.  (Not Raised Below).

POINT IV

THE DEFENDANT WAS DENIED THE RIGHT TO
A FAIR TRIAL WHEN THE JURY'S REQUEST FOR
A    READBACK    OF    TESTIMONY    WENT
UNANSWERED.  (Not Raised Below).

After reviewing the record in light of these contentions, we affirm.

I.

We begin by reciting the salient facts.  When the victim was eight-years old, her mother left her in the care of her grandparents on the weekends. Defendant and several other adults lived in the grandparents' home.  About two months into this arrangement, the child began to balk at going to the home and cried each time her mother dropped her off.

The child eventually told her mother that defendant had been sexually abusing her for over a year.  When the grandparents were at work, defendant would tell the child to sit on his lap.  He would put a blanket across their laps, place his hand underneath her clothing, and touch her vagina.  On other occasions, defendant kissed the victim, thrust his tongue into her mouth, and

3

grabbed her vagina "really hard." Defendant also groped the child's breasts and buttocks.

The victim's mother sought assistance from a community group, which contacted the Division of Child Protection and Permanency (Division). In turn, the Division alerted the police, and Detective Carolina Moreno was assigned to investigate the matter. Detective Moreno interviewed[2] the child, who disclosed the abuse.

Detective Moreno thereafter attempted to contact defendant at the grandparents' home, but the victim's grandmother told her that defendant no longer lived there. Detective Moreno testified that by this time, the grandmother had learned of the allegations against defendant and stated she was unable to give the detective any contact information for him. Shortly thereafter, formal charges and an arrest warrant were lodged against defendant, and the United States Marshals Regional Task Force began to assist Detective Moreno in locating defendant.

About a month later, defendant was found in New York. Accompanied by other officers, Detective Moreno arrested defendant in New York, advised

---

[2] Detective Moreno videotaped the interview, and it was played to the jury at the trial.

him of the charges, and escorted him to a local police station. At the station, Detective Moreno again advised defendant of the charges he faced, read him his Miranda[3] rights, and interviewed him after he waived his right to counsel.

During the interview, defendant made a series of incriminating statements. For example, although defendant denied the charges against him, he admitted that it was possible that he touched the child "in a careless moment" when his "hand slipped and passed by her . . . her . . . her part." Defendant also stated he might have touched the child's vagina when he accidently dropped a television remote between her legs while the child was sitting on his lap.

Defendant did not testify and did not present any witnesses on his behalf.

II.

In Point I of his brief, defendant asserts that Detective Moreno failed to advise him that she had a warrant for his arrest prior to her interview with him and, as a result, the trial judge erred by denying his motion to suppress the incriminating statements he made to her. Because there is no factual support in the record for this claim, we reject defendant's contention.

In State v. A.G.D., detectives questioned the defendant at his home about allegations of sexual abuse, but did not tell him that an arrest warrant had already

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

been issued.  178 N.J. 56, 59 (2003).  After the defendant agreed to accompany the detectives to the prosecutor's office, he confessed to the abuse.  Id. at 60-61.  In determining that the defendant's confession should have been suppressed, the Supreme Court held that the State's "failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights."  Id. at 68.  The Court ruled that in future cases, law enforcement officers conducting similar interviews must

> make a simple declaratory statement at the outset of an interrogation that informs a defendant of the essence of the charges filed against him.  That information should not be woven into accusatory questions posed during the interview.  The State may choose to notify defendants immediately before or after administering Miranda warnings, so long as defendants are aware of the charges pending against them before they are asked to waive the right to self-incrimination.
>
> [State v. Vincenty, 237 N.J. 122, 134 (2019) (citing A.G.D., 178 N.J. at 68-69).]

Contrary to defendant's argument, Detective Moreno scrupulously complied with these requirements before and during her interview with defendant in New York.  As discussed above, the State obtained an arrest warrant for defendant, which enabled it to enlist federal authorities to assist in the search for him.  After defendant was located, the detective went to the house

6

where he was staying. As Detective Moreno and other officers approached the house, defendant came outside.

As detailed in her testimony at the suppression hearing, Detective Moreno then "personally walked up to [defendant] and advised him that he . . . was under arrest and he was charged with three charges from New Jersey, the aggravated sexual assault, sexual assault and endangering." Defendant was handcuffed, searched, transported to a local police station in a marked patrol car, and placed in a holding cell. In addition, the transcript of defendant's subsequent interview demonstrates that before any questioning again, Detective Moreno again told defendant that he was "under arrest" and had been charged with two counts of sexual assault and with endangering the welfare of a child.

Under these circumstances, defendant's present claim that he was not aware he had been arrested or the nature of the charges against him strains all credulity. Detective Moreno complied with the requirements of A.G.D. and defendant's unsupported contention to the contrary lacks any merit.

### III.

In Point II of his brief, defendant contends for the first time that the trial judge should have sua sponte barred the State from introducing the videotape of the victim's interview in evidence. Defendant asserts that because the child also

7

testified at the trial, the video was "cumulative evidence" that should have been excluded under N.J.R.E. 403.

We find insufficient merit in this contention to warrant discussion in a written opinion. R. 2:11-3(e)(2). While the child obviously discussed examples of defendant's abuse in both her videotaped and trial testimony, the incidents she described, and the manner in how she described them,[4] were sufficiently different to clearly permit the introduction of the video. Thus, defendant's argument lacks merit.

## IV.

Defendant next argues in Point III of his brief that the judge should have made a sua sponte ruling striking Detective Moreno's brief references to the fact that the State had treated defendant as a "fugitive" on the charges against him because he left the State and would have to be extradited back to New Jersey. Again, we disagree.

"A trial court's ruling on the admissibility of evidence is reviewed on appeal for abuse of discretion." State v. Rose, 206 N.J. 141, 157 (2011). "However, if the party appealing did not make its objection to [the] admission

---

[4] For example, the child used anatomically-correct dolls to illustrate defendant's groping of her vagina during the video, but did not repeat this testimony using the dolls at trial.

known to the trial court, the reviewing court will review for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2).

Plain error does not exist on this record. Evidence of defendant's fugitive status was relevant to explain why he was arrested and interviewed in New York. However, even if this were not the case, the detective's comments concerning defendant's status were fleeting and were not thereafter highlighted by the State. Defendant explained during his interview that he left New Jersey to seek employment after the child disclosed he had been abusing her. This explanation was presented to the jury as part of defendant's recorded interview, and the State did nothing to question defendant's account at trial.

Under these circumstances, we discern no basis for disturbing defendant's convictions for abusing the child victim in this case.

V.

Finally, defendant argues in Point IV of his brief that the judge improperly failed to answer the jury's request for a readback of testimony. However, this argument also lacks support in the record.

During its deliberations, the jury sent a cryptic note to the judge that said, "court testimony of [the victim] and her mother, transcript." After bringing the

jury into the court room, the judge explained that the only transcripts of testimony that had been marked in evidence were the transcript of defendant's interview, and the transcript of the victim's videotaped interview with Detective Moreno. The judge stated that he could not be sure whether the jurors wanted the written transcript of the videotaped interview, or to have the trial testimony read to them. After fully explaining these options, the judge asked the jurors to return to the jury room and provide "some additional clarification precisely what it is that you're looking for. So if you can return to the jury room, discuss this a little bit and get back to us[,] I would appreciate it."[5]

Defendant does not quote any of the judge's extended colloquy with the jury in his brief. Instead, he argues for the first time on appeal that the judge should have not asked for clarification of the jury's obviously ambiguous request and "should have had the testimony played back for the jury as requested." This argument lacks merit.

When, as here, a jury's question is ambiguous, the judge is obliged to clear the confusion by asking the jury the meaning of its request.

> A question from a jury during its deliberations means
> that one or more jurors need help and that the matter is
> of sufficient importance that the jury is unable to

---

[5] The jury did not respond to the request for clarification and less than an hour later, returned with its unanimous guilty verdict on all counts.

> continue its deliberations until the judge furnishes that help. An appropriate judicial response requires the judge to read the question with care to determine precisely what help is needed.
>
> [State v. Parsons, 270 N.J. Super. 213, 221 (App. Div. 1994).]

The trial judge fully complied with this requirement. It was not clear whether the jury wanted to review the transcript of the victim's videotaped testimony or have a readback of the child's trial testimony. Thus, the judge properly asked the jury to clarify its request. Indeed, defendant did not object to the prudent manner in which the judge handled the request. Therefore, we reject defendant's newly-minted contention on this point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION